UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

KELLI ELLIOTT,                                                                            Plaintiff,

v.                                                                    Civil Action No. 3:17-cv-456-DJH

YAMAMOTO FB ENGINEERING, INC.,                                                            Defendant.

\* \* \* \* \*

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Kelli Elliott, an employee of Defendant Yamamoto FB Engineering, Inc., alleges that Yamamoto violated the Kentucky Civil Rights Act (KCRA) by retaliating against her after she complained about and reported sexual harassment in the workplace. (Docket No. 1-1) Yamamoto removed this action to federal court on the basis of diversity of citizenship. (D.N. 1) Elliott moved to remand (D.N. 5), and Yamamoto moved to dismiss (D.N. 6). For the reasons discussed below, both motions will be denied.

**I.    BACKGROUND**

Elliott alleges the following facts in the complaint, which the Court will accept as true for purposes of the motion to dismiss. *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). She works for the defendant, Yamamoto, as a human-resources administrator. (D.N. 1-1, PageID # 12) While working for Yamamoto, Elliott was repeatedly subjected to comments of a sexual nature. (*Id.*) In compliance with Yamamoto's policies, Elliott complained about and reported sexual harassment in the workplace. (*Id.*) In response to Elliott's complaints, Yamamoto threatened to terminate her employment. (*Id.*)

Elliott filed this retaliation and sexual-harassment suit in state court (*id.*, PageID # 11-12), and Yamamoto removed the action to this Court on the basis of diversity of citizenship

1

pursuant to 28 U.S.C. §§ 1441 and 1332. (D.N. 1) Elliott has filed a motion to remand the case to state court (D.N. 5), stipulating that she will not seek a judgment or request a verdict for an amount in excess of $74,999. (D.N. 5-1) Yamamoto opposes the motion to remand (D.N. 7) and has moved to dismiss the case for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.N. 6)

## II. MOTION TO REMAND

### A. Standard

28 U.S.C. § 1441 governs the removal of civil actions to federal court. Section 1441 provides:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a). "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—(1) citizens of different States; [and] (2) citizens of a State and citizens or subjects of a foreign state . . . ." 28 U.S.C. § 1332(a).

### B. Analysis

#### 1. Amount in Controversy

In its notice of removal, Yamamoto alleges that Elliott "seeks an award of non-economic compensatory damages . . . [that] easily could exceed the $75,000 jurisdictional threshold as the KCRA places no cap on the amount of compensatory damages that [plaintiffs] may recover." (D.N. 1, PageID # 5) After removal, Elliott submitted a stipulation stating that (1) "[t]he amount in controversy in this matter . . . does not exceed the sum or value of $74,999.00, exclusive of

interest and costs; at any time up to and including trial and any subsequent appeals"; and (2) "[she] will not seek a judgment or request a verdict for an amount in excess of $74,999.00 and will not seek attorney's fees for any amount that, together with any judgment or verdict, would exceed $74,999." (D.N. 5-1, PageID # 39)

"[A] post-removal stipulation reducing the amount in controversy to below the jurisdictional limit does not require remand to state court." *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 872 (6th Cir. 2000). However,

> where a state prevents a plaintiff from pleading a specific amount of damages—as is the case in Kentucky—and the plaintiff provides specific information about the amount in controversy for the first time in a stipulation, this district views such stipulations as a *clarification* of the amount in controversy rather than a *reduction* of such.

*Agri-Power, Inc. v. Majestic JC, LLC*, No. 5:13-CV-00046-TBR, 2013 WL 3280244, at *3 (W.D. Ky. June 27, 2013). Thus, "a plaintiff may stipulate that it neither seeks, nor will accept, damages in an amount greater than $75,000, and . . . such a stipulation will destroy the amount-in-controversy requirement for § 1332 jurisdiction." *Id.* "Still, 'only where that clarifying stipulation is unequivocal will it limit the amount of recoverable damages and warrant remand.'" *Id.* (quoting *Proctor v. Swifty Oil Co., Inc.*, No. 3:12-CV-00490-TBR, 2012 WL 4593409, at *3 (W.D. Ky. Oct. 1, 2012)).

Another judge in this district recently concluded that a stipulation with language identical to that used in this case was not sufficiently unequivocal to destroy jurisdiction and warrant remand. *See Stephens v. Charter Commc'ns Holdings, LLC*, No. 3:17-cv-00354-JHM, 2017 WL 4273307, at *2 (W.D. Ky. Sept. 26, 2017). In *Stephens*, the plaintiff stipulated that he "[would] not seek a judgment or request a verdict for an amount in excess of $74,999.00 and [would] not seek attorney's fees for any amount that, together with any judgment or verdict, would exceed

$74,999." *Id.* The Court reasoned that although the plaintiff stipulated that he would not seek a verdict of $75,000 or more, he did not stipulate that he would not accept or seek to enforce a judgment of that amount. *Id.* The Court therefore concluded that the stipulation was "less than unequivocal" and "thus deficient to defeat removal." *Id.*

The stipulation in this case is identical to the one found inadequate in *Stephens*. (*See* D.N. 5-1, PageID # 39) *See Stephens*, 2017 WL 4273307, at *2. Like the plaintiff in *Stephens*, Elliott stipulates that she will not *seek* an amount above the jurisdictional threshold but does not limit her ability to *accept* a higher amount. *See id.* (*See* D.N. 5-1, PageID # 39) This Court agrees with Judge McKinley that such a stipulation "does not effectively limit the amount in controversy to a sum below $75,000." *Stephens*, 2017 WL 4273307, at *2. In the absence of any other challenge to the amount in controversy, the Court finds that it possesses subject-matter jurisdiction over this case, and the motion to remand will therefore be denied. *See id.*

### 2. Diversity of Citizenship

In response to Yamamoto's motion to dismiss, Elliott also argues that no diversity of citizenship exists between the parties because Elliott and Yamamoto are both citizens of Kentucky.[1] (D.N. 8, PageID # 57) In support, Elliott has submitted a copy of Yamamoto's annual report, which lists a Louisville, Kentucky address as the organization's "principal office address." (D.N. 8-1, PageID # 64)

---

[1] Yamamoto asserts that this argument is improper because Elliott did not raise it in her motion to remand, and "it is akin to raising a new argument for the first time in a reply brief." (D.N. 9, PageID # 70) While Yamamoto is correct that Elliott did not raise this diversity argument in her motion to remand (*see* D.N. 5), "[t]he existence of subject matter jurisdiction may be raised at any time, by any party," *In re Lewis*, 398 F.3d 735, 739 (6th Cir. 2005), and federal courts have an "independent obligation to ensure that subject matter jurisdiction exists." *Olden v. LaFarge Corp.*, 383 F.3d 495, 498 (6th Cir. 2004).

For purposes of diversity jurisdiction, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). Yamamoto is incorporated under the laws of the State of Delaware. (D.N. 1-2, PageID # 30) At issue here is the location of Yamamoto's principal place of business.

For purposes of diversity jurisdiction, "principal place of business" refers to "the place where the corporation's high level officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010). This place is also known as the "nerve center." *See id.* at 80-81.

> And in practice it should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the "nerve center," and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion).

*Id.* at 93. The "mere filing of a form . . . listing a corporation's 'principal executive offices' [is not], without more, . . . sufficient proof to establish a corporation's 'nerve center.'" *Id.* at 97. Instead, the "nerve center" is "the place of actual direction, control, and coordination." *Id.*

According to a sworn declaration by Yamamoto's human-resources manager, corporate officers located at Yamamoto's parent-company headquarters in Japan "exercise ultimate authority over Yamamoto's activities in Louisville, Kentucky," "make significant corporate decisions pertaining to [Yamamoto]," and "direct and control Yamamoto's corporate policies." (D.N. 1-2, PageID # 30-31) Yet Yamamoto's annual report, filed with the Kentucky Secretary of State, lists a Kentucky address as the organization's "principal office address." (D.N. 8-1, PageID # 64)

The Court finds a decision from the Eastern District of Kentucky instructive on this issue. In *Pegasus Industries, Inc. v. Martinrea Heavy Stampings, Inc.*, the corporate defendant had filed a certificate of authority with the Kentucky Secretary of State's Office that listed a Shelbyville, Kentucky location as "the mailing address of the corporation's principal office." No. 3:16-cv-00024-GFVT, 2016 WL 3043143, at *2 (E.D. Ky. May 27, 2016). The court determined that the filing "[was] not conclusive proof of [the defendant's] nerve center" and relied instead upon an affidavit submitted by the vice president of the defendant's parent company explaining the corporation's organizational structure. *Id.* The affidavit revealed that an executive vice president of the parent company, whose office was located in Canada, supervised the defendant's plant in Kentucky; two other officers directed and controlled the defendant from the parent company's corporate headquarters in Canada; and the defendant's officers directed, controlled, and coordinated the defendant's activities from Canada. *Id.* Therefore, although the defendant maintained employees and conducted business in Kentucky, "significant corporate policy and oversight decisions [were] made from [Canada]," making it the "nerve center" under the *Hertz* test. *Id.* at *3.

As in *Pegasus Industries, Inc.*, Yamamoto filed a document with the Kentucky Secretary of State's Office in which it listed a Kentucky address as its "principal office address." (D.N. 8-1, PageID # 64) But Yamamoto's human-resources manager also submitted a sworn declaration explaining the company's corporate structure. (*See* D.N. 1-2) According to that declaration, Yamamoto is an incorporated subsidiary of two parent corporations: Yamamoto Seisakusho, Inc., located in Japan, and Marubeni-Itochu Steel America, Inc., located in New York. (*Id.*, PageID # 30) Yamamoto Seisakusho, Inc. owns ninety percent of Yamamoto's stock. (*Id.*) Corporate officers located at Yamamoto Seisakusho, Inc.'s headquarters in Japan "exercise

ultimate authority over Yamamoto's activities in Louisville, Kentucky," "make significant corporate decisions pertaining to [Yamamoto]," and "direct and control Yamamoto's corporate policies." (*Id.*, PageID # 31) This information shows that Japan is "the place of actual direction, control, and coordination" for Yamamoto. *See Hertz Corp.*, 559 U.S. at 97. The Court thus finds that Yamamoto's principal place of business, or "nerve center," is in Japan, *see id.* at 80-81, and that Yamamoto is therefore a citizen of Delaware (D.N. 1-2, PageID # 30) and Japan for diversity purposes. *See* 28 U.S.C. § 1332(c)(1). Because Plaintiff Elliott is a citizen of Kentucky (D.N. 1-1, PageID # 11; D.N. 1, PageID # 2), and Defendant Yamamoto is a citizen of Delaware and Japan, there is complete diversity between the parties, and remand is not warranted.

## III. MOTION TO DISMISS

### A. Standard

In her response in opposition to Yamamoto's motion to dismiss, Elliott argues that the Kentucky Rules of Civil Procedure and the "notice pleading" standard should be applied to determine the sufficiency of her complaint. (D.N. 8, PageID # 61) But the Federal Rules of Civil Procedure "apply to a civil action after it is removed from a state court." Fed. R. Civ. P. 81(c)(1). And as the Sixth Circuit has noted: "In diversity cases, including those removed from state court, the federal pleading standards apply." *Armstrong v. Shirvell*, 596 F. App'x 433, 444 (6th Cir. 2015). The Court thus agrees that "once a complaint is removed to federal court, it is subject to the federal pleading requirements, including Rule 8 and the *Twombly-Iqbal* standard." *Tucker v. Heaton*, No. 5:14-CV-00183-TBR, 2015 WL 1884384, at *3 (W.D. Ky. Apr. 24, 2015); *see also D.H. v. Matti*, No. 3:14-cv-732-CRS, 2015 WL 4530419, at *7 (W.D. Ky. July 27, 2015) (applying the federal pleading standard where complaint was initially filed in state

7

court).  "Therefore, the Court will consider [Elliott's] complaint according to federal pleading standards rather than those of the Commonwealth." *Tucker*, 2015 WL 1884384, at *3.

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Factual allegations are essential; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the Court need not accept such statements as true. *Id.*  A complaint whose "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" does not satisfy the pleading requirements of Rule 8 and will not withstand a motion to dismiss. *Id.* at 679.

**B.      Analysis**

**1.      Unlawful Retaliation**

Elliott brings a claim for "actionable wrongful retaliation" in violation of section 344.280 of the KCRA.  (D.N. 1-1, PageID # 12)  "Retaliation claims under the KCRA are evaluated under the same standard as . . . federal Title VII claims." *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 504 (6th Cir. 2014).  "The liberal pleading standard applicable to civil complaints does not require that a retaliation complaint set forth specific facts establishing a prima facie case, but it must allege facts that establish a plausible claim to relief." *Carrethers v. Speer*, 698 F. App'x 266, 270 (6th Cir. 2017).  To establish a plausible claim for retaliation, Elliott's complaint must show that "(1) she engaged in protected activity under Title VII, (2) the defendant was aware of this activity, (3) she was subjected to an adverse employment action by

the defendant, and (4) there was a causal connection between the protected activity and the adverse employment action." *Id.* Yamamoto argues that Elliott's "retaliation claim fails as a matter of law because she has failed to allege facts sufficient to demonstrate that [it] took an action against her that legally qualifies as an adverse employment action." (D.N. 6, PageID # 43)

Elliott alleges that she "complained about and reported sexual harassment in the work place" and that, in response to her complaints, "Yamamoto retaliated against [her] by threatening her position with a notice of intent to terminate."[2] (D.N. 1-1, PageID # 12) These allegations allow the Court to draw the "reasonable inference" that Elliott engaged in protected activity; Yamamoto threatened to terminate Elliott's employment; and the threat resulted from her protected activity. *See Carrethers*, 698 F. App'x at 271; *see also Laporte v. B.L. Harbert Int'l, LLC*, No. 5:09-CV-219, 2010 WL 2541154, at *3 (W.D. Ky. June 18, 2010) (finding allegation that defendants retaliated against plaintiff "in response to his [racial-discrimination] complaints" sufficient to show causation). Although Elliott does not specify the manner in which she complained of sexual harassment, her allegation that she complained to Yamamoto, prompting a threat to terminate her, "necessarily implies" that Yamamoto was aware of her complaints. *See Carrethers*, 698 F. App'x at 271. Moreover, the Sixth Circuit has found an employer's recommendation that an employee be terminated to be sufficiently adverse for purposes of the adverse-employment-action element of a Title VII retaliation claim. *See Sanford v. Main St.*

---

[2] Elliott's complaint also confusingly refers to Yamamoto's "actions in terminating [her] employment" after stating that she "is [a] current employee of [Yamamoto]." (*See* D.N. 1-1, PageID # 12) The Court assumes that the reference to Elliott's termination is a typographical error given that (1) the complaint states that she is a current employee of Yamamoto; and (2) the "unlawful retaliation" section of the complaint refers to Yamamoto's "actions in *threatening* [her] employment." (*Id.* (emphasis added)) However, Elliott should consider requesting leave to amend her complaint to clarify the alleged facts and the nature of her claims.

9

*Baptist Church Manor, Inc.*, 327 F. App'x 587, 599 (6th Cir. 2009). Construing the facts in the light most favorable to Elliott, *see Directv, Inc.*, 487 F.3d at 476, the Court concludes that she has pleaded sufficient facts to establish a plausible retaliation claim, and the motion to dismiss this claim will be denied.

### 2. Sexual Harassment

Elliott also brings a claim titled "sexual harassment" in which she states that Yamamoto's actions "constitute an actionable wrongful retaliation in violation of KRS 344.280." (D.N. 1-1, PageID # 12) She thus appears to conflate her sexual-harassment claim with her retaliation claim. In any event, her complaint also alleges that she was "repeatedly subjected to comments of a sexual nature about graphic sexual content." (*Id.*) The Court therefore assumes that Elliott intended to bring a separate sexual-harassment claim under the KCRA.[3]

"A sexual harassment claim brought under the Kentucky Civil Rights Act ('KCRA') is analyzed in the same manner as a claim brought under Title VII, its federal counterpart." *Porter v. United Parcel Serv., Inc.*, No. 4:13-CV-00065-JHM, 2014 WL 12573675, at *5 (W.D. Ky. Dec. 30, 2014) (citing *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 347 (6th Cir. 2005)). Title VII "'affords employees the right to work in an environment free from discriminatory

---

[3] Yamamoto argues that Elliott's sexual-harassment claim is "confusing and ambiguous" and therefore fails to provide Yamamoto with "fair notice" of the claim. (D.N. 6, PageID # 44-45) Yamamoto is correct that a complaint "must provide the defendant with 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Mellentine v. Ameriquest Mortg. Co.*, 515 F. App'x 419, 423-24 (6th Cir. 2013) (quoting *Twombly*, 550 U.S. at 555). The complaint here, however, lists "sexual harassment" as the first cause of action and alleges facts (i.e., allegations of repeated sexual comments) to support such a claim. (*See* D.N. 1-1, PageID # 12) This was sufficient to give Yamamoto "fair notice" of the sexual-harassment claim. *See Mills v. Barnard*, 869 F.3d 473, 484-85 (6th Cir. 2017) (finding that complaint gave defendant "fair notice" of fabrication-of-evidence claim where complaint did not specifically assert such a claim but alleged facts to support the claim); *cf. Rushing v. Chase Auto Fin. Corp.*, No. 5:11-cv-419-JMH, 2012 WL 1752393, at *4 n.3 (E.D. Ky. May 15, 2012) (finding that complaint gave defendants "fair notice" of defamation claim where such a claim was not included in a heading but was clearly stated elsewhere in the complaint).

intimidation, ridicule, and insult,' and, to enforce this right, prohibits conduct that creates a 'hostile environment.'" *Id.* (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)).

> To establish a hostile work environment claim, a plaintiff must show that "(1) she is a member of a protected class (female); (2) she was subjected to harassment, either through words or actions, based on sex; (3) the harassment had the effect of unreasonably interfering with her work performance and creating an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer."

*Moore v. Humana, Inc.*, No. 3:10-CV-26-S, 2010 WL 2961205, at *2 (W.D. Ky. July 26, 2010) (quoting *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 270 (6th Cir. 2009)). Elliott does not have to plead a prima facie case to survive dismissal, but she must "produce 'sufficient factual content from which a court, informed by its judicial experience and common sense, could draw the reasonable inference' that her work environment was both *objectively* and *subjectively* hostile due to sexually or racially-charged harassment." *Keys v. Humana, Inc.*, No. 3:09-CV-00834-CRS, 2013 WL 5740109, at *5 (W.D. Ky. Oct. 22, 2013) (quoting *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012)).

Elliott's complaint alleges that she "was repeatedly subjected to comments of a sexual nature about graphic sexual content." (D.N. 1-1, PageID # 12) She further alleges that she "complained about and reported sexual harassment in the work place" in accordance with Yamamoto's policies. (*Id.*) In response to those complaints, Yamamoto allegedly threatened Elliott's position. (*Id.*) The Court concludes that these alleged facts are sufficient at this stage for Elliott's sexual-harassment claim to survive. *See Halcomb v. Black Mountain Res., LLC*, No. 13-141-DLB, 2015 WL 1757919, at *5 (E.D. Ky. Apr. 17, 2015) (concluding that plaintiff's allegation that defendant employers did not "satisfactorily resolve" his sexual-harassment complaints created a reasonable inference that defendants failed to properly respond to the harassment, thus making it plausible that they were liable); *Sullivan v. Paycor, Inc.*, No. 3:13-

CV-00028-H, 2013 WL 2286069, at *2 (W.D. Ky. May 23, 2013) (denying motion to dismiss hostile-work-environment claim even though severity of sexual comments was not well established because a complaint "need not state every fact in support of a claim" at this stage); *Moore*, 2010 WL 2961205, at *2 (finding it plausible that defendant's alleged conduct created a hostile work environment where the plaintiff "[went] so far as to complain about it"). The motion to dismiss this claim will therefore be denied.

## IV. CONCLUSION

For the reasons discussed above, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

(1) Kelli Elliott's motion to remand (D.N. 5) is **DENIED**.

(2) Yamamoto FB Engineering, Inc.'s motion to dismiss (D.N. 6) is **DENIED**.

(3) Pursuant to 28 U.S.C. § 636(b)(1)(A), this matter is hereby referred to U.S. Magistrate Judge Dave Whalin, for resolution of all litigation planning issues, entry of scheduling orders, consideration of amendments thereto, and resolution of all non-dispositive matters, including discovery issues. Judge Whalin is further authorized to conduct a settlement conference in this matter at any time.

February 13, 2018

**David J. Hale, Judge**
**United States District Court**